UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM GRECIA,<br><br>    Plaintiff,<br><br>    v.<br><br>BIG TEN NETWORK SERVICES, LLC,<br><br>    Defendant. | Case No. 1:16-cv-_____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGMENT

William Grecia brings this patent-infringement action against Big Ten Network Services, LLC ("BTN").

**Parties**

1. William Grecia is an individual. He maintains a residence in Downingtown, Pennsylvania.

2. BTN is a Delaware corporation, having its principal place of business in Chicago, Illinois.

**Jurisdiction and Venue**

3. This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court may exercise personal jurisdiction over BTN. BTN's principal place of business is in this District. BTN conducts continuous and systematic business in Illinois and in this District. This patent-infringement case arises directly from BTN's continuous and systematic

activity in this District. In short, this Court's exercise of jurisdiction over BTN would be consistent with traditional notions of fair play and substantial justice.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) and 1400(b).

**Background**

7. William Grecia owns United States Patent Nos. 8,533,860 (the "'860 patent") and 8,402,555 (the "'555 patent") (together, the "patents-in-suit"). William Grecia invented the methods, systems, and products claimed in the patents-in-suit.

8. The field of the invention of the patents-in-suit is digital rights management, commonly referred to as "DRM." The movement of books, movies, and music to digital form has presented a challenge to the copyright owners of the content. The owners wish to sell the content in a digital form and transfer all attributes of ownership to the buyer, and yet owners of the content must protect value by preventing "pirating" of the content through illicit, unauthorized copying.

9. The prior art had locked the purchased content, a movie for example, to specific devices and in some cases limited playback rights to a single device. These prior art DRM methods required the content providers to maintain computer servers to receive and send session authorization keys to clients, and the prior DRM methods required that the client reconnect with the servers to obtain reauthorization. These DRM schemes may be characterized by limiting acquired content to a specific device that the client continually had to reauthorize to enjoy the acquired content.

10. The inventions claimed in the patents-in-suit provide a solution: a consumer of digital content may enjoy the content on an unlimited number of the consumer's devices; enjoy

the content with the consumer's friends and family, all while protecting against unlicensed use.

## Count I – Infringement of U.S. Patent No. 8,533,860

11. William Grecia hereby realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1-10 above.

12. William Grecia is the exclusive owner of the '860 patent, which is attached as Exhibit 1.

13. The '860 patent is valid and enforceable.

14. BTN is infringing at least one of the 30 methods, systems, and apparatuses claimed in the '860 patent by its use and sale of the TV Everywhere service ("TVE").

15. For example, and for illustration of at least one of the 30 claims of the '860 patent that Grecia alleges that BTN infringes, BTN directly infringes claim 9 of the '860 patent as follows:

   a. Claim 9 is a "system for authorizing access to digital content using a worldwide cloud system infrastructure . . . comprising connected modules in operation as computing and storage . . . comprising a server, a database, devices and users . . . the system facilitating access rights between a plurality of data processing devices, the system working as a front-end agent for access rights authentication between the plurality of data processing devices[.]" (Ex. 1, 15:45-54.) TVE is a system that authorizes access rights to digital content (for example, the BTN television program *BTN Live*) between a user's data processing devices, (e.g. smart TV, tablet, laptop). TVE facilitates access between a user's devices by acting as a front-end agent for authenticating access rights. For example, a user who has purchased the right to view BTN programming through her television provider (for example Cox Communications) can gain access to BTN

programming on her computer by visiting the BTN website using her web browser. TVE uses Adobe Pass, which is a worldwide cloud system infrastructure.

  b. The system of Claim 9 includes a "first receipt module . . . receiving a digital content access request from at least one communications console of the plurality of data processing devices, the access request being a read or write request of metadata of the digital content . . . the request comprising a verification token provided by a user corresponding to the digital content, wherein the verification token is one or more of a password, [or] e-mail address[.]" (*Id.*, 15:56-16:1.) TVE includes a receipt module. For example, a user who wishes to view an episode of *BTN Live* using the BTN website will be prompted to provide her verification token (the email address and password associated with her Cox account). The TVE receipt module receives this as a content access request.

  c. Claim 9 includes "an authentication module . . . authenticating the verification token[.]" (*Id.*, 16:4-5.) Having received the verification token from the user, the TVE authentication module contacts Cox to determine whether the user's email address and password represent a Cox subscriber having rights to view *BTN Live*.

  d. Claim 9 also includes "a connection module . . . establishing a connection with the at least one communications console, wherein the communications console is a combination of a graphic user interface (GUI) and an Application Programmable Interface (API) wherein the API is obtained from a verified web service . . . capable of facilitating a two way data exchange to complete a verification process wherein the data exchange session comprises at least one identification reference[.]" (*Id.*, 16:6-14.) Once the user's verification token has been authenticated, TVE's connection module establishes a connection with Adobe Pass cloud services using the Access Enabler API,

which is combined with the BTN website GUI.

    e.  Claim 9 includes "a request module . . . requesting at least one identification reference from the at least one communications console, wherein the identification reference comprises one or more of a verified web service account identifier . . . [and] a secondary receipt module . . . receiving the at least one identification reference[.]" (*Id.*, 16:15-25.) TVE has a request module and a secondary receipt module that request and receive an authorization token (the identification reference) from Adobe Pass. The authorization token is a verified web service account identifier verifying that the user is authorized to access BTN programming, for example, *BTN Live*.

    f.  Claim 9 includes "a branding module . . . writing at least one of the verification token or the identification reference into the metadata." (*Id.*, 16:26-28.) TVE's branding module writes the verification token and identification reference into the metadata associated with BTN programming, including *BTN Live*.

### Count II – Infringement of U.S. Patent No. 8,402,555

  16.  William Grecia hereby realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1-15 above.

  17.  William Grecia is the exclusive owner of the '555 patent, which is attached as Exhibit 2.

  18.  The '555 patent is valid and enforceable.

  19.  BTN is infringing at least one of the 26 methods, systems, and apparatuses claimed in the '555 patent by its use and sale of the TV Everywhere service ("TVE").

  20.  For example, and for illustration of at least one of the 26 claims of the '555 patent

that Grecia alleges that BTN infringes, BTN directly infringes claim 12 of the '555 patent as follows:

  a. Claim 12 is a "system for monitoring access to an encrypted digital media, the system facilitating interoperability between a plurality of data processing devices, the system working as a front-end agent for access rights authorization between a plurality of data processing devices[.]" (Ex. 2, 15:65-16:2.) TVE is a system that monitors access to digital content (for example, the BTN television program *BTN Live*) between a user's data processing devices, e.g. smart TV, tablet, laptop. TVE facilitates interoperability between a user's data processing devices by acting as a front-end agent for authenticating access rights. For example, a user who has purchased the right to view BTN programming through her television provider (for example Cox Communications) can gain access to BTN programming on her computer by visiting BTN's website using her web browser. TVE uses Adobe Pass, which is a worldwide cloud system infrastructure.

  b. Claim 12 includes "a first receipt module . . . receiving an encrypted digital media access branding request from at least one communications console . . . the branding request being a read or write request of metadata of the encrypted digital media, the request comprising a membership verification token provided by a first user, corresponding to the encrypted digital media[.]" (*Id.*, 16:3-10.) TVE includes a receipt module. For example, when a user wishes to access *BTN Live*, the user is prompted to provide her Cox membership verification token (the email address and password associated with her Cox account). The receipt module receives this as a branding request.

  c. Claim 12 includes "an authentication module . . . authenticating the membership verification token, the authentication being performed in connection with a

-6-

token database[.]" (*Id.*, 16:11-14.) Having received the membership verification token from the user, the TVE authentication module contacts Cox to determine whether the user's email address and password represent a Cox subscriber with rights to access *BTN Live*, and Cox uses its database of membership verification tokens to authenticate the membership verification token.

   d. Claim 12 includes "a connection module . . . establishing connection with the at least one communications console wherein the communications console is a combination of a graphic user interface (GUI) and an Applications Programmable Interface (API) protocol wherein the API is obtained from a verified web service . . . capable of facilitating a two way data exchange to complete a verification process[.]" (*Id.*, 16:15-22.) Once the user's membership verification token has been authenticated, TVE's connection module establishes a connection with Adobe Pass cloud services using the Access Enabler API, which is combined with the BTN website GUI.

   e. Claim 12 includes "a request module . . . requesting at least one electronic identification reference from the at least one communications console wherein the electronic identification reference comprises a verified web service account identifier . . . [and] a second receipt module . . . receiving the at least one electronic identification reference[.]" (*Id.*, 16:23-30.) TVE has a request module and a second receipt module that request and receive an authorization token (the electronic identification reference) from Adobe Pass. The authorization token is a verified web service account identifier verifying that the user is authorized to access BTN programming, for example, *BTN Live*.

   f. Claim 12 includes "a branding module . . . branding metadata of the encrypted digital media by writing the membership verification token and the electronic

identification reference into the metadata." (*Id.*, 16:30-34.) TVE's branding module writes the membership verification token and the electronic identification reference into the metadata associated with BTN digital content, including *BTN Live*.

## Prayer for Relief

WHEREFORE, William Grecia prays for the following relief against BTN:

(a)  Judgment that BTN has directly infringed claims of the '860 patent and the '555 patent;

(b)  A reasonable royalty;

(c)  Pre-judgment interest and post-judgment interest at the maximum rate allowed by law; and

(d)  Such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

William Grecia demands a trial by jury on all matters and issues so triable.

Date: October 31, 2016            Respectfully Submitted,

*/s/ Matthew M. Wawrzyn*
Matthew M. Wawrzyn (#6276135)
*matt@wawrzynlaw.com*
Stephen C. Jarvis (#6309321)
*stephen@wawrzynlaw.com*
**WAWRZYN & JARVIS LLC**
233 S. Wacker Drive, 84th Floor
Chicago, IL 60606
Phone: (847) 274-9844
Fax: 312.283.8331

*Counsel for William Grecia*